**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION (DAYTON)**

CITY OF BELLBROOK,

                Plaintiff,

v.

3M COMPANY; E. I. DUPONT NE NEMOURS
AND COMPANY; THE CHEMOURS COMPANY;
THE CHEMOURS COMPANY FC, LLC; DUPONT
DE NEMOURS, INC.; CORTEVA, INC.; TYCO
FIRE PRODUCTS LP; CHEMGUARD, INC.;
JOHNSON CONTROLS INTERNATIONAL, PLC;
CENTRAL SPRINKLER, LLC; FIRE PRODUCTS
GP HOLDING, LLC; KIDDE-FENWAL, INC;
KIDDE PLC, INC; CHUBB FIRE, LTD.; UTC FIRE
& SECURITY AMERICAS CORPORATION, INC.;
RAYTHEON TECHNOLOGIES CORPORATION;
CARRIER GLOBAL CORPORATION; NATIONAL
FOAM, INC.; ANGUS INTERNATIONAL SAFETY
GROUP, LTD; BUCKEYE FIRE EQUIPMENT
COMPANY; ARKEMA, INC.; BASF
CORPORATION; CHEMDESIGN PRODUCTS,
INC.; DYNAX CORPORATION; CLARIANT
CORPORATION; CHEMICALS INCORPORATED;
NATION FORD CHEMICAL COMPANY; AGC,
INC.; AGC CHEMICALS AMERICAS, INC.;
DEEPWATER CHEMICALS, INC.; ARCHROMA
MANAGEMENT, LLC; ARCHOMA U.S. INC.;
JOHN DOE DEFENDANTS 1-49,

                Defendants.

Civil Action No. 3:22-cv-334

**NOTICE OF REMOVAL**

        Defendants Tyco Fire Products LP and Chemguard, Inc. (collectively "Tyco" unless separately identified), by and through undersigned counsel, give notice of the removal of this

action, pursuant to 28 U.S.C. §§ 1442(a)(1) and 1446, from the Common Pleas Court of Greene County, Ohio, to the United States District Court for the Southern District of Ohio, Western Division. As grounds for removal, Tyco alleges as follows on personal knowledge as to their own conduct and status and on information and belief as to all other matters:

## PRELIMINARY STATEMENT

1.     Plaintiff seeks to hold Tyco and certain other Defendants liable based on their alleged conduct in designing, manufacturing, marketing, distributing, and/or selling aqueous film-forming foam ("AFFF") that Plaintiff alleges contaminated its water sources and other property (collectively, "Plaintiff's Property") in and around the city of Bellbrook, Ohio and parts of Sugarcreek Township.

2.     Specifically, Plaintiff alleges that Defendants' AFFF contained per- and polyfluoroalkyl substances ("PFAS") including perfluorooctanoic acid ("PFOA") and perfluorooctane sulfonic acid ("PFOS"), and that the handling, storage, use, and disposal of Defendant's AFFF contaminated Plaintiff's Property with PFAS.

3.     At least some of the AFFF that gives rise to Plaintiff's claims has been manufactured by a select group of suppliers (including Tyco) in accordance with the military's rigorous specifications ("MilSpec AFFF"). Plaintiff's Property is affected by PFAS from MilSpec AFFF used and released at, among other locations, the former Gentile Air Force Station and the Springfield Beckley Air National Guard Base. Under the federal "government contractor" defense recognized in *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988), Tyco is immune to tort liability for its design and manufacture of MilSpec AFFF and its provision of warnings for the product. Under the federal officer removal statute, 28 U.S.C. § 1442, Tyco is entitled to remove this action in order to have its federal defense adjudicated in a federal forum. *See Papp v. Fore-*

*Kast Sales Co.*, 842 F.3d 805, 810–15 (3d Cir. 2016). Such removal "fulfills the federal officer removal statute's purpose of protecting persons who, through contractual relationships with the Government, perform jobs that the Government otherwise would have performed." *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 133 (2d Cir. 2008).

## BACKGROUND

4. This action was filed on October 28, 2022, in the Common Pleas Court of Greene County, Ohio, bearing case number 22 CV 0653. (Ex. A, Complaint). Venue is proper in this Court pursuant to 28 U.S.C. §§ 115(b)(1) and 1441(a) because Common Pleas Court of Greene County, Ohio, is located within the United States District Court for the Southern District of Ohio, Western Division.

5. Chemguard, Inc. was served with process on October 31, 2022 and Tyco Fire Products LP was served with process on November 2, 2022. This Notice of Removal is timely under 28 U.S.C. § 1446(b).

6. Tyco is not required to notify or obtain the consent of any other Defendant in this action to remove this action as a whole under § 1442(a)(1). *See, e.g.*, *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006); *Linden v. Chase Manhattan Corp.*, 1999 WL 518836, at *1 (S.D.N.Y. July 21, 1999); *Torres v. CBS News*, 854 F. Supp. 245, 246 n.2 (S.D.N.Y. 1994).

7. Plaintiff generally alleges that certain of the Defendants, including Tyco, have designed, manufactured, marketed, and/or sold AFFF products, which contain PFAS, including PFOS, PFOA, and/or their chemical precursors. (Ex. A, Compl. ¶¶ 8-10). Plaintiff alleges that the AFFF formulated, manufactured, marketed, and/or sold by certain Defendants has contaminated Plaintiff's Property (*Id.* ¶¶ 9, 12).

8.     Plaintiff asserts a claim against all Defendants for defective design (*Id.* ¶¶ 76-93), failure to warn (*Id.* ¶¶ 94-106), trespass (*Id.* ¶¶ 107-115), negligence (*Id.* ¶¶ 116-124), public nuisance (*Id.* ¶¶ 125-134), private nuisance (*Id.* ¶¶ 135-142). Plaintiff also asserts a separate claim for violation of Ohio's Uniform Fraudulent Transfer Act against Defendants E. I. DuPont de Nemours and Company, the Chemours Company, Corteva, Inc., and Dupont De Nemours, Inc. (*Id.* ¶¶ 143-156).

9.     Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon all parties to this action and a copy is being filed with the Clerk of Common Pleas Court of Greene County, Ohio.

10.     By filing a Notice of Removal in this matter, Tyco does not waive the rights of any Defendant to object to service of process, the sufficiency of process, jurisdiction over the person, or venue; and Tyco specifically reserves the rights of all Defendants to assert any defenses and/or objections to which they may be entitled.

11.     Tyco reserves the right to amend or supplement this Notice of Removal

## REMOVAL IS PROPER UNDER THE FEDERAL
## OFFICER REMOVAL STATUTE, 28 U.S.C. § 1442

12.     Removal here is proper under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), which provides for removal of an action relating to a defendant's acts undertaken at the direction of a federal officer. Removal is appropriate under this provision where the removing defendant establishes that: (a) it is a "person" within the meaning of the statute; (b) it acted under federal authority; (c) its actions taken pursuant to a federal officer's direction have a causal nexus with plaintiff's claims or injuries or are otherwise related to the lawsuit; and (d) it can assert a "colorable" federal defense. *See Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 254 (4th Cir. 2017); *cf. Mesa v. California*, 489 U.S. 121, 124–25, 129–31, 133–35 (1989); *Papp*, 842 F.3d at 812;

4

*Cuomo v. Crane Co.*, 771 F.3d 113, 115 (2d Cir. 2014); *Hilbert v. McDonnell Douglas Corp.*, 529 F.Supp.2d 187, 196 (D.Mass.2008); *Isaacson*, 517 F.3d at 135; *Durham*, 445 F.3d at 1251.

13.     Removal rights under the federal officer removal statute are much broader than under the general removal statute, 28 U.S.C. § 1441.  Suits against defendants acting on behalf of federal officers "may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law." *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999).  This is because § 1442(a)(1) protects "the government's need to provide a federal forum for its officers and those who are 'acting under' a federal office." *Albrecht v. A.O. Smith Water Prods.*, No. 11 Civ. 5990(BSJ), 2011 WL 5109532, at *3 (S.D.N.Y. Oct. 21, 2011) (citation omitted).  This important federal policy "should not be frustrated by a narrow, grudging interpretation of [§] 1442(a)(1)." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969); *see Durham*, 445 F.3d at 1252.  To the contrary, § 1442 as a whole must be "liberally construe[d]" in favor of removal.  *Papp*, 842 F.3d at 812 (alterations in original) (internal quotation marks omitted).

14.     All requirements for removal under § 1442(a)(1) are satisfied where, as here, the notice of removal alleges that the plaintiff's injuries are caused at least in part by MilSpec AFFF. *See, e.g.*, *Nessel v. Chemguard, Inc.*, No. 1:20-cv-1080, 2021 WL 744683, at *3 (W.D. Mich. Jan. 6, 2021) (denying motion to remand in AFFF case against Tyco and other manufacturers and holding that, notwithstanding plaintiffs' assertion "that they do not seek resolution of any claims related to MilSpec AFFF[,] . . . Plaintiffs cannot decide what defense Defendants might present"); *Ayo v. 3M Co.*, No. 18-CV-0373(JS)(AYS), 2018 WL 4781145 (E.D.N.Y. Sept. 30, 2018) (denying motion to remand and finding that federal officer removal was proper in a lawsuit against Tyco and other manufacturers of MilSpec AFFF).  The court overseeing the *In re Aqueous Film-Forming Foams Products Liability Litigation* multi-district litigation has also found on multiple

5

occasions that removal under § 1442 is proper where the notice of removal alleges that plaintiffs' injuries are caused, at least in part, by MilSpec AFFF. *See* Order, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, ECF No. 103 (D.S.C. May 24, 2019) ("MDL Order 1"), at 3–6; Order, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, ECF No. 320 (D.S.C. Sept. 27, 2019) ("MDL Order 2"), at 3–5; Order, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, ECF No. 325 (D.S.C. Oct. 1, 2019) ("MDL Order 3"), at 3–6. Given its experience with the claims and defenses in AFFF litigation, the MDL Court's holdings clearly demonstrate that this case, too, has been properly removed to federal court.[1]

## A.    MilSpec AFFF

15.    The United States Naval Research Laboratory developed AFFF in response to catastrophic fires aboard the aircraft carriers *USS Forrestal* in 1967 and *USS Enterprise* in 1969.[2] Decades later, the Naval Research Laboratory described the development of AFFF as "one of the most far-reaching benefits to worldwide aviation safety."[3] Since the 1960s, the United States military has used MilSpec AFFF on military bases, airfields, and Navy ships—settings where fuel fires are inevitable and potentially devastating—to train its personnel, put out fires, save lives, and protect property. In addition, since at least 2006, larger civilian airports (so-called "Part 139 airports") have been required by FAA regulations to stock and use MilSpec AFFF.

---

[1] Following removal, Tyco intends to designate this action for transfer to the MDL.

[2] *See* Press Release 71-09r, U.S. Naval Research Lab., Navy Researchers Apply Science to Fire Fighting (Oct. 23, 2009), https://tinyurl.com/y2jq4q4w.

[3] U.S. Navy, NRL/MR/1001-06-8951, The U.S. Naval Research Laboratory (1923–2005): Fulfilling the Roosevelts' Vision for American Naval Power 37 (2006) ("Fulfilling the Roosevelts' Vision"), https://permanent.fdlp.gov/gpo125428/roosevelts.pdf.

16.     The manufacture and sale of MilSpec AFFF is governed by rigorous military specifications created and administered by Naval Sea Systems Command.  The applicable specification, Mil-F-24385, was first promulgated in 1969, and has been revised a number of times since then.[4]  All MilSpec AFFF products must be qualified for listing on the applicable Qualified Products List prior to military procurement.  Prior to such listing, a manufacturer's products are examined, tested, and approved to be in conformance with specification requirements.[5]  The MilSpec designates Naval Sea Systems Command as the agency responsible for applying these criteria and determining whether AFFF products satisfy the MilSpec's requirements.  After a product is added to the Qualified Products List, "[c]riteria for retention of qualification are applied on a periodic basis to ensure continued integrity of the qualification status."[6]  Naval Sea Systems Command reserves the right to perform any of the quality assurance inspections set forth in the specification where such inspections are deemed necessary to ensure supplies and services conform to prescribed requirements.

17.     From its inception until very recently, the MilSpec included the express requirement that MilSpec AFFF contain "fluorocarbon surfactants."  All fluorocarbon surfactants are PFAS, and that category includes PFOA, PFOS, and their chemical precursors—the very compounds at issue in the Complaint here.  This requirement has been in force for virtually the entire time period at issue in the Complaint.  In 2019 the MilSpec removed the modifier "fluorocarbon" from "surfactants," but it expressly states that "the DoD intends to acquire and use AFFF with the lowest

---

[4] The 1969 MilSpec and all its revisions and amendments through April 2020 are available at https://tinyurl.com/yxwotjpg.

[5] Dep't of Defense SD-6, Provisions Governing Qualification 1 (Feb. 2014), https://tinyurl.com/y5asm5bw.

[6] *Id.*

demonstrable concentrations of . . . PFOS and PFOA" "[i]n the short term." PFOA or PFOS are unavoidably present at some concentrations in fluorocarbon surfactants, and the current MilSpec expressly contemplates that AFFF formulations will contain PFOA and PFOS (subject to recently imposed limits).

**B.**    <u>All the Requirements of 28 U.S.C. § 1442(a)(1) Are Satisfied</u>

     *1.*   *The "Person" Requirement Is Satisfied*

18.    The first requirement for removal under the federal officer removal statute is satisfied here because Tyco Fire Products LP and Chemguard, Inc. (a limited partnership and corporation, respectively) meet the definition of "persons" under the statute. For purposes of § 1442(a)(1), the term "person" includes "corporations, companies, associations, firms, [and] partnerships." *Papp*, 842 F.3d at 812 (quoting 1 U.S.C. § 1); *accord Bennett v. MIS Corp.*, 607 F.3d 1076, 1085 (6th Cir. 2010); *Isaacson*, 517 F.3d at 135–36.

     *2.*   *The "Acting Under" Requirement Is Satisfied*

19.    The second requirement ("acting under" a federal officer) is satisfied when an entity assists or helps carry out, the duties or tasks of a federal officer. *Papp*, 842 F.3d at 812. The phrase "acting under" is to be "liberally construed in favor of the entity seeking removal." *Sawyer*, 860 F.3d at 255 (internal quotation marks omitted). Federal courts "have explicitly rejected the notion that a defendant could only be 'acting under' a federal officer if the complained of conduct was done at the specific behest of the federal officer or agency." *Papp*, 842 F.3d at 813. Rather, "courts have unhesitatingly treated the 'acting under' requirement as satisfied where a contractor seeks to remove a case involving injuries arising from equipment that it *manufactured for the government*." *Sawyer*, 860 F.3d at 255 (emphasis in original).

20.    The requirement of "acting under" federal office is met here because the effect of Plaintiff's claims, at least in part, is to challenge Tyco's alleged conduct in designing and

manufacturing products to government specifications.  MilSpec AFFF is a mission-critical military and aviation safety product that, without the support of private contractors, the government would have to produce for itself.  *See Ayo*, 2018 WL 4781145, at *9 (describing MilSpec AFFF as a "mission-critical" and "life-saving product" used by all branches of the U.S. armed forces and NATO members (internal quotation marks omitted)); *cf. Isaacson*, 517 F.3d at 137.  The Naval Research Laboratory states that, "[a]lthough [it] was responsible for the original concepts and formulations, it was necessary to elicit the aid of the chemical industry to synthesize the fluorinated intermediates and agents to achieve improvements in formulations."[7]  Accordingly, the military has long depended upon outside contractors like Tyco to develop and supply AFFF.  *See Chemguard*, 2021 WL 744683, at *3 (holding that Tyco and other AFFF manufacturers were "acting under" a federal officer in connection with the manufacture and sale of MilSpec AFFF); *Ayo*, 2018 WL 4781145, at *8–9 (same); *see also* MDL Order 1, at 3–6 (finding that the "acting under" requirement was satisfied because defendant demonstrated that it was manufacturing AFFF under the guidance of the U.S. military); MDL Order 2, at 3–5; MDL Order 3, at 3–6 (same).  If Tyco and other manufacturers did not provide MilSpec AFFF, the government would have to manufacture and supply the product itself.

21.     In designing, manufacturing, and supplying the MilSpec AFFF at issue, Tyco acted under the direction and control of one or more federal officers.  Specifically, Tyco acted in accordance with detailed specifications, promulgated by Naval Sea Systems Command, that govern AFFF formulation, performance, testing, storage, inspection, packaging, and labeling.  Further, the AFFF products in question were subject to various tests by the United States Navy before and after being approved for use by the military and for inclusion on the Qualified Products

---

[7] Fulfilling the Roosevelts' Vision, *supra* n.3, at 37.

List maintained by the DoD.[8]  Tyco acts under the government in designing and producing MilSpec

AFFF even if the MilSpec AFFF at issue is sold to and used by non-government entities.

     3.  *The Nexus Requirement Is Satisfied*

  22.  The third requirement, that the defendant's actions taken "under color of federal

office" have a nexus with plaintiff's claims or injuries or be otherwise related to the lawsuit, erects

a hurdle that "is quite low." *Isaacson*, 517 F.3d at 137.[9]  To show the required nexus, it is sufficient

for a defendant to establish only "a *connection or association* between the act in question and the

federal office." *Sawyer*, 860 F.3d at 258 (quoting *Papp*, 842 F.3d at 813 (adding emphasis)).

  23.  Here, Plaintiff's claims arise at least in part from Tyco's production and sale of

AFFF manufactured to military specifications.  Plaintiff alleges that the use of PFAS in AFFF is

the source of its injuries.  Tyco contends that at least some of the AFFF Plaintiff used was MilSpec

AFFF and that the use of PFAS in MilSpec AFFF was required by military specifications.  The

conflict is apparent: MilSpec AFFF was developed by Tyco, and other manufacturers to meet

specifications established by the DoD.  The design choices Plaintiff is attempting to impose via

state tort law would create a conflict in which Tyco could not comply with both the MilSpec and

the purported state-prescribed duty of care.  *See Boyle*, 487 U.S. at 509; *see also Ayo*, 2018 WL

4781145, at *9 ("[T]here is evidence of a 'causal connection' between the use of PFCs in AFFF

and the design and manufacture of AFFF for the government."); MDL Order 1, at 5–6 ("Here,

[Plaintiff]'s claims arise out of use of AFFF products that it claims Tyco manufactured and sold,

and for which the U.S. military imposes MilSpec standards.  The Court . . . finds that the causation

---

[8] *See* Dep't of Defense, SD-6, *supra* n.5, at 1.

[9] The "acting under" and "under color of" prongs overlap.  Both "are satisfied if the actions subject to suit resulted directly from government specifications or direction."  *Albrecht*, 2011 WL 5109532, at *5.

element of federal officer removal is satisfied here."); MDL Order 2, at 5 (finding the causation element of federal officer removal satisfied where Tyco's AFFF products, "for which the military imposes MilSpec standards," were used at several airports); MDL Order 3, at 5–6 (same as to MilSpec AFFF used at a single airport).

24.     Here, Plaintiff's purported injuries arise at least in part from MilSpec AFFF.  The nexus between Plaintiff's alleged injuries and Tyco's actions under color of federal office is clear. It is irrelevant that the Plaintiff does not expressly contend that it has been injured by MilSpec AFFF.  Courts "credit Defendants' theory of the case when determining whether [the] causal connection exists."  *Isaacson*, 517 F.3d at 137; *see also Chemguard*, 2021 WL 744683, at *3 (noting that "Plaintiffs cannot decide what defense Defendants might present").

<em>4.     The "Colorable Federal Defense" Requirement Is Satisfied</em>

25.     The fourth requirement ("colorable federal defense") is satisfied by Tyco's assertion of the government contractor defense.

26.     At the removal stage, a defendant need only show that its government contractor defense is colorable, *Sawyer*, 860 F.3d at 254; that is, "that the defense was 'legitimate and [could] reasonably be asserted, given the facts presented and the current law.'"  *Papp*, 842 F.3d at 815 (alteration in original) (citation omitted).  "A defendant 'need not win his case before he can have it removed.'"  *Id.* (quoting *Willingham*, 395 U.S. at 407); *see also Isaacson*, 517 F.3d at 139 ("To be 'colorable,' the defense need not be 'clearly sustainable,' as the purpose of the statute is to secure that the validity of the defense will be tried in federal court." (citation omitted)); *O'Connell v. Foster Wheeler Energy Corp.*, 544 F. Supp. 2d 51, 54 (D. Mass. 2008) (upon removal, defendant must raise "colorable federal defense").  At the removal stage, the inquiry "is purely jurisdictional, and neither the parties nor the district courts should be required to engage in fact-intensive motion

11

Case: 3:22-cv-00334-TMR-CHG Doc #: 1 Filed: 11/22/22 Page: 12 of 21  PAGEID #: 12

practice, pre-discovery, to determine the threshold jurisdictional issue." *Cuomo*, 771 F.3d at 116.[10]

Moreover, "this inquiry is undertaken whilst viewing the facts in the light most favorable to

Defendants." *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 783–84 (E.D. Pa. 2010).

"Precisely in those cases where a plaintiff challenges the factual sufficiency of the defendant's

defense, the defendant should 'have the opportunity to present [his] version of the facts to a federal,

not a state, court.'" *Cuomo*, 771 F.3d at 116 (alteration in original) (citation omitted).

27.     Under the government contractor defense, the defendant is not liable for the design,

manufacture, or warnings of equipment or supplies "when (1) the United States approved

reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the

supplier warned the United States about the dangers in the use of the equipment that were known

to the supplier but not to the United States." *Boyle*, 487 U.S. at 512.

28.     Tyco has satisfied these elements for purposes of removal.  As discussed above,

Naval Sea Systems Command approved reasonably precise specifications, governing MilSpec

AFFF formulation, performance, testing, storage, inspection, packaging, and labeling.  Tyco's

products appeared on the DoD Qualified Products List, which could have happened only if Naval

Sea Systems Command had first determined that they conformed to the MilSpec.  *See Ayo*, 2018

WL 4781145, at *13 ("[T]here is colorable evidence that Manufacturing Defendants' Mil-Spec

AFFF is not a stock product and that the government approved reasonably precise specifications

requiring them to use PFCs, including PFOS and PFOA, in their products."); *see also id.* ("There

is also colorable evidence . . . that Manufacturing Defendants' AFFF products conformed to the

---

[10] *See also Kraus v. Alcatel-Lucent*, No. 18-2119, 2018 WL 3585088, at *2 (E.D. Pa. July 25, 2018) ("A court does not 'determine credibility, weigh the quantum of evidence or discredit the source of the defense' at this stage.  Instead, [the court] only determine[s] whether there are sufficient facts alleged to raise a colorable defense." (internal citation omitted)).

government's reasonably precise specifications."); MDL Order 1, at 5 (finding defendant demonstrated a colorable defense "where it contends that its AFFF products were manufactured according to the U.S. military's MilSpec specifications"); MDL Order 2, at 4 (same, as to Tyco); MDL Order 3, at 5 (same); *see also Chemguard*, 2021 WL 744683, at \*4.

29.   Moreover, the government was sufficiently informed regarding alleged product-related "dangers," *Boyle*, 487 U.S. at 512, to exercise its discretionary authority in specifying and procuring MilSpec AFFF.  The military specifications have long included testing protocols and requirements for toxicity, chemical oxygen, and biological demand.  Indeed, it is clear that the United States has long understood that AFFF contains PFAS and may contain or break down into PFOS and/or PFOA; that AFFF constituents can migrate through the soil and potentially reach groundwater; and that it has been reported that this may raise environmental or human health issues.[11]   For example, as early as October 1980, a report supported by the U.S. Navy Civil Engineering Laboratory, U.S. Air Force Engineering Service Center, and the U.S. Army Medical Research and Development Command stated that AFFF contained fluorocarbons and that "[a]ll of the constituents resulting from fire fighting exercises are considered to have adverse effects environmentally."[12]   By no later than 2001, DoD was aware of data purportedly showing PFAS compounds in MilSpec AFFF to be "toxic" and "persistent."   In 2002, the United States Environmental Protection Agency issued a draft hazard assessment for PFOA, which reviewed in detail, among other data, human epidemiological studies and animal toxicology studies pertaining

---

[11] *See, e.g.*, EPA, *Revised Draft Hazard Assessment of Perfluorooctanoic Acid and Its Salts* 1–6 (Nov. 4, 2002).

[12] *See* Edward S. K. Chian et al., *Membrane Treatment of Aqueous Film Forming Foam (AFFF) Wastes for Recovery of Its Active Ingredients* 1 (Oct. 1980), https://apps.dtic.mil/dtic/tr/fulltext/u2/a136612.pdf.

to alleged associations between PFOA and cancer. More recently, in a November 2017 report to Congress, the DoD acknowledged the concerns raised by the EPA regarding PFOS and PFOA. Nonetheless, it still described AFFF containing PFOS or PFOA as a "mission critical product [that] saves lives and protects assets by quickly extinguishing petroleum-based fires."[13] Indeed, Naval Sea Systems Command continues to require that MilSpec AFFF contain "surfactants," and recognizes that PFAS, including PFOS and PFOA, will be present (subject to recently imposed limits for PFOS and PFOA) in AFFF formulations.[14] *See Ayo*, 2018 WL 4781145, at *12 ("That the DoD knows of the alleged risks of PFC-based AFFF products but continues to purchase them supports the position that the government approved reasonably precise specifications for the claimed defective design."); MDL Order 1, at 5 ("As to whether [defendant] adequately informed the U.S. military of dangers associated with its AFFF products of which the military was not already aware, [defendant] points to materials such as a November 2017 Department of Defense report to Congress, in which the agency acknowledged the [EPA]'s stated concerns with PFOS/PFOA in drinking water . . . .").

30. At minimum, these facts constitute colorable evidence that Naval Sea Systems Command "made a discretionary determination" regarding the formulation of MilSpec AFFF after weighing the fire-suppression benefits against the alleged risks. *See Twinam v. Dow Chem. Co. (In re "Agent Orange" Prod. Liab. Litig.*), 517 F.3d 76, 90 (2d Cir. 2008); *see also Albrecht*, 2011 WL 5109532, at *5 ("A defendant is not required to warn the government where 'the government

---

[13] Dep't of Defense, *Aqueous Film Forming Foam Report to Congress* 1–2 (Oct. 2017) (pub. Nov. 3, 2017), https://tinyurl.com/wshcww4.

[14] *See* MIL-PRF-24385F(SH), Amendment 4, § 6.6 & Tables I, III (2020), https://quicksearch.dla.mil/qsDocDetails.aspx?ident_number=17270; *see also* David Vergun, *DOD Officials Discuss Fire-Fighting Foam Replacement, Remediation Efforts* (Sept. 16, 2020), https://tinyurl.com/ty5ku8hp.

knew as much or more than the defendant contractor about the hazards of the product.'" (citation omitted)). Where, as here, the government has exercised "discretionary authority over areas of significant federal interest such as military procurement," the government contractor defense applies. *In re "Agent Orange" Prod. Liab. Litig.*, 517 F.3d at 89–90; *see also Ayo*, 2018 WL 4781145, at *13.

31. Tyco's use of PFAS in MilSpec AFFF was required by military specifications. By seeking to impose tort liability on Tyco for alleged injuries to Plaintiff that were caused in whole or in part by Tyco's compliance with military specifications, Plaintiff is attempting to use state tort law to attack design choices dictated by the military. The government contractor defense precludes such an attack. *See Boyle*, 487 U.S. at 509.

32. In the MDL, the court has found that the government contractor defense asserted by Tyco and other defendants presents genuine issues of fact for trial. *See In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, Order Denying Partial Summary Judgment, ECF No. 2601 (D.S.C. Sept. 16, 2022). A defense that presents triable issues is by definition better than merely "colorable." *See 3M Combat Arms Earplugs Prods. Liab. Litig.*, 2020 WL 5835311, at *2 (defense may be colorable for purposes of § 1442(a)(1) even if it *fails* to survive summary judgment).

WHEREFORE, Tyco removes this action from the Common Pleas Court of Greene County, Ohio, to the United States District Court for the Southern District of Ohio, Western Division.

Respectfully submitted,


/s/ Erin E. Rhinehart
Erin E. Rhinehart (0078298)
    Trial Attorney
Raika N. Casey (0101526)
FARUKI PLL
110 North Main Street, Suite 1600
Dayton, OH  45402
Telephone:  (937) 227-3714
Fax:  (937) 227-3717
Email:  erhinehart@ficlaw.com
          rcasey@ficlaw.com

Attorneys for Defendants
Tyco Fire Products LP and Chemguard, Inc.

## CERTIFICATE OF SERVICE

I certify that on the 22 day November of 2022, the foregoing Notice of Removal was filed with the Clerk of Courts using the CM/ECF system, which will send notification of such filing to CM/ECF participants, and I certify that I have sent via electronic mail to the following counsel and/or mailed by United States Postal Service the document to the non-CM/ECF participants and unrepresented parties:

D. Dale Seif, Jr. (OH Bar 75924)
McNamee & McNamee, PLL
2625 Commons Boulevard
Beavercreek, OH 45431
Phone: (937) 427-1367
Fax: (937) 427-1369
Email: dseif@mcnameelaw.com

Robert R. Miller (OH Bar 0047186)
Oths, Heiser, Miller, Waigand & Clagg, LLC
Sixteen East Broadway, P.O. Box 309
Wellston, Ohio 45692
Phone: (740) 384-2111
Fax: (740) 384-5632
Email: rmiller@ohlaw.com

Brandon J. Taylor* (LA Bar 27662)
Cossich, Sumich, Parsiola & Taylor, LLC
8397 Highway 23, Suite 100
Belle Chase, LA 70037
Phone: (504) 394-9000
Fax: (504) 394-9110
Email: btaylor@cossichlaw.com
*Application for Pro Hac Vice admission pending

Zachary C. Schaengold (OH Bar 0090953)
Baron & Budd, P.C.
600 New Hampshire Ave. NW, 10th Floor
Washington, DC 20037
Phone: (202) 333-4562
Email: zschaengold@baronbudd.com

Counsel for Plaintiff City of Bellbrook

17

Daniel L. Ring, Esq.
Tyler D. Alfermann, Esq.
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL  60606
dring@mayerbrown.com
talfermann@mayerbrown.com

Counsel for Defendant 3M Company

Peter Condron, Esq.
Clifford J. Zatz, Esq.
CROWELL & MORING
1001 Pennsylvania Avenue, NW
Washington, D.C.  20004-2595
pcondron@crowell.com
czatz@crowell.com

Counsel for Defendants AGC Chemicals Americas, Inc. and AGC, Inc.

Heidi Levine, Esq.
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL  60603
hlevine@sidley.com

Counsel for Defendant Arkema, Inc.

Melanie Black Dubis, Esq.
Charles Raynal, Esq.
PARKER POE ADAMS & BERNSTEIN LLP
301 Fayetteville Street, Suite 400
Raleigh, NC  27601
charlesraynal@parkerpoe.com
melaniedubis@parkerpoe.com

Counsel for Defendants Archroma U.S., Inc.,
Archroma Management, LLC, and Clariant Corporation

Matt Holian, Esq.
DLA PIPER LLP (US)
33 Arch Street, 26th Floor
Boston, MA  02110-1447

18

matt.holian@us.dlapiper.com
John Wellschlager, Esq.
DLA PIPER LLP (US)
The Marbury Building
6224 Smith Avenue
Baltimore, MD  21209-3600
Tel: (410) 580-4281
john.wellschlager@dlapiper.com

Counsel for Defendant BASF Corporation

Michael L. Carpenter, Esq.
GRAY LAYTON KERSH SOLOMON FURR & SMITH, P.A.
Post Office Box 2636
Gastonia, NC  28053-2636
mcarpenter@gastonlegal.com

Counsel for Defendant Buckeye Fire Equipment Company

Jonathan I. Handler, Esq.
Keith H. Bensten, Esq.
DAY PITNEY LLP
One Federal Street, 29th Floor
Boston, MA  02110
kbensten@daypitney.com
jihandler@daypitney.com

Counsel for Defendants Carrier Global Corporation, Kidde-Fenwal, Inc,
Kidde PLC, Inc., Chubb Fire, Ltd., UTC Fire & Security Americas Corporation, Inc.,
and Raytheon Technologies Corporation

Jonathan Blakley, Esq.
GORDON REES SCULLY MANSUKHANI, LLP
One North Franklin, Suite 800
Chicago, IL  60606
jblakley@grsm.com

Counsel for Defendant ChemDesign Products Inc.

John Parker, Esq.
Oliver Twaddell, Esq.
GOLDBERG SEGALLA LLP
711 Third Ave. Suite 1900
New York, NY  10017
jparker@goldbergsegalla.com
otwaddell@goldbergsegalla.com

19

Counsel for Defendant Chemicals Incorporated

Kat Hacker, Esq.
BARTLIT BECK LLP
1801 Wewatta, Suite 1200
Denver, CO 80202
dupont@bartlitbeck.com

Counsel for Defendants Corteva, Inc. and DuPont de Nemours, Inc.

Kurt D. Weaver, Esq.
WOMBLE BOND DICKSON (US) LLP
555 Fayetteville Street, Suite 1100
Raleigh, NC 27601
kurt.weaver@wbd-us.com

Counsel for Defendant Deepwater Chemicals, Inc.

Kirk G. Warner, Esq.
Clifton L. Brinson, Esq.
Addie K.S. Ries, Esq.
SMITH, ANDERSON, BLOUNT, DORSETT, MITCHELL & JERNIGAN, L.L.P.
Post Office Box 2611
Raleigh, NC 27602-2611
kwarner@smithlaw.com
cbrinson@smithlaw.com
aries@smithlaw.com

Counsel for Defendant Dynax Corporation

David R. Erickson, Esq.
Brent Dwerlkotte, Esq.
SHOOK, HARDY & BACON L.L.P.
2555 Grand Blvd.
Kansas City, MO 64108
derickson@shb.com
dbdwerlkotte@shb.com

Counsel for Defendants E. I. DuPont de Nemours and Company,
The Chemours Company, and The Chemours Company FC, LLC

Ethan R. Ware, Esq.
WILLIAMS MULLEN
1441 Main Street, Suite 1250
P.O. Box 8116 (29202)

Columbia, SC 29201
eware@williamsmullen.com

Counsel for Defendant Nation Ford Chemical Company

Keith E. Smith, Esq.
GREENBERG TRAURIG, LLP
Three Logan Square
1717 Arch Street, Suite 400
Philadelphia, PA 19103
smithkei@gtlaw.com

Counsel for Defendants National Foam Inc. and Angus International Safety Group, Ltd.


Central Sprinkler LLC
c/o The Corporation Trust Company
1209 Orange Street
Wilmington, DE 19801

Defendant

Fire Products GP Holding, LLC
c/o CT Corporation System
9360 Glacier Hwy Ste 202
Juneau, AK 99801

Defendant

Johnson Controls International, PLC
One Albert Quay
Ballintemple, Cork T12X8N6
Ireland

Defendant


/s/ Erin E. Rhinehart
Erin E. Rhinehart

4873-3144-9151.1